UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**CHRISTOPHER GOODVINE,**

    **Plaintiff,**

    v.                                                       Case No. 13-CV-0017

**DR. AZZEM PASHA,**
**MERCY MEDICAL CENTER, and**
**ABC INSURANCE COMPANY,**

    **Defendants,**

---

## ORDER

    Plaintiff, Christopher Goodvine, a state prisoner, filed a pro se complaint alleging violations of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, and medical malpractice. This matter comes before me on plaintiff's motion for leave to proceed in forma pauperis and for screening of plaintiff's complaint.

    Plaintiff is required to pay the statutory filing fee of $350.00 for this action. See 28 U.S.C. § 1915(b)(1). If a prisoner does not have the money to pay the filing fee, he can request leave to proceed in forma pauperis. Plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2), and has been assessed and paid an initial partial filing fee of $1.79. I will grant his motion.

    I am also required to screen complaints brought by parties proceeding in forma pauperis. 28 U.S.C. § 1915(e)(2). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim

upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. Id.

To state a cognizable claim under the federal notice pleading system, plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in Twombly by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. Id. If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

2

On October 15, 2012, while he was incarcerated at the Wisconsin Resource Center (WRC), plaintiff attempted suicide by lacerating his arm. Plaintiff lost consciousness and was rushed to Mercy Medical Center in Oshkosh, Wisconsin, where he was treated by emergency room physician Dr. Azzem Pasha. Plaintiff asserts that Dr. Pasha was hostile to him because plaintiff was a prisoner who had attempted suicide. Dr. Pasha made several disparaging comments regarding plaintiff and never asked plaintiff how long or how much he had bled.

The nursing staff at WRC had stanched the bleeding before transferring plaintiff to the hospital. Dr. Pasha waited to see if the bleeding would start again or if plaintiff would require surgery. When it was apparent the bleeding would not start again, the laceration was closed with 12-13 sutures. Plaintiff was discharged from the hospital within 4-5 hours.

Dr. Pasha was aware that plaintiff had lost a significant amount of blood, that his blood count was very low, his potassium and calcium levels were very low, and that he was malnourished, dehydrated, and suffering from the concomitants of malnourishment and dehydration. Dr. Pasha nevertheless discharged plaintiff from the hospital after only a few hours without further treatment.

Additionally, an emergency room nurse and physician's assistant asked plaintiff if he would hurt himself again, and plaintiff stated, "I'm afraid so." (Complaint at 7). Yet plaintiff was discharged without being evaluated by a mental health professional.

Shortly after returning to WRC, plaintiff was transferred to a Wisconsin Department of Corrections prison, where he attempted suicide again and was sent to Divine Savior Hospital in Portage, Wisconsin. The physician at Divine Savior Hospital admitted plaintiff and ordered a blood transfusion during which plaintiff received at least one liter of blood.

The physician told plaintiff that this transfusion was required because of the significant blood loss on October 15 and again on October 18.

Plaintiff sets forth two claims against Dr. Pasha and Mercy Medical Center under EMTALA: (1) failure to appropriately screen and stabilize plaintiff's medical conditions of malnourishment and dehydration, and (2) failure to screen and stabilize plaintiff's mental health conditions of depression and suicidal thoughts.

> EMTALA was enacted to address the problem of "patient dumping," where hospitals transferred indigent patients from one hospital to the next while their emergency medical conditions worsened. EMTALA requires hospitals receiving federal funds to screen for an emergency medical condition any patient who comes to the hospital; if an emergency condition exists, the patient may not be transferred to another hospital or discharged until he or she has received stabilizing treatment.

Curry v. Advocate Bethany Hosp., 204 Fed.Appx. 553, 556 (7th Cir. 2006) (citations omitted).

The EMTALA applies to psychiatric conditions as well as medical conditions. Thomas v. Christ Hosp. and Medical Center, 328 F.3d 890, 893 (7th Cir. 2003). The EMTALA defines "stabilized" as a state in which "no material deterioration of the condition is likely, within reasonable medical probability, to result." 42 U.S.C. § 1395dd(e)(3)(B); see also Thomas, 328 F.3d at 893. The Health Care Financing Administration, Department of Health and Human Services promulgated Federal Regulations and Interpretive Guidelines for EMTALA that provide that a psychiatric patient is considered to be "stable when he/she is no longer considered to be a threat to him/herself or to others." Thomas, 328 F.3d at 893.

4

Plaintiff's complaint contains sufficient allegations to proceed on both screening and stabilization claims regarding both his medical and mental health needs. These claims are against Dr. Pasha and Mercy Medical Center.

I will now consider plaintiff's state law medical negligence claim against Dr. Pasha and his insurer and his claim against Mercy Medical Center and its insurer that the hospital had a policy or custom of not treating providing adequate treatment to prisoners. "That the treatment provided was ineffective – that it may even have involved a misdiagnosis or malpractice – does not violate EMTALA so long as [the patient] was stabilized. EMTALA is not a federal malpractice statue." Curry, 204 Fed.Appx. at 556. Nevertheless, the court will exercise supplemental jurisdiction over plaintiff's state law claims, including medical malpractice against Dr. Pasha and a claim that Mercy Medical Center has a policy or custom of providing insufficient medical and mental health treatment to prisoners. See 28 U.S.C. § 1367(a).

Therefore,

**IT IS ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket #2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon defendants Dr. Azzem Pasha and Mercy Medical Center pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires

5

the court to order service by the U.S. Marshals Service precisely because <u>in forma pauperis</u> plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS ALSO ORDERED** that defendants Dr. Azzem Pasha and Mercy Medical Center shall file responsive pleadings to the complaint.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $348.21 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

**IT IS FURTHER ORDERED** that plaintiff shall submit all correspondence and legal material to:

>Honorable Lynn Adelman
>% Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is notified that from now on, he is required under Federal Rule of Civil Procedure 5(a) to send a copy of every paper or document filed with the court to the opposing party or, if the opposing party is represented by counsel, to counsel for that party. Fed. R. Civ. P. 5(b). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to the opposing party or that party's attorney, if the party is represented by an attorney.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 31st day of January, 2013.

s/ Lynn Adelman

LYNN ADELMAN
District Judge